**Opinion issued August 28, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-14-00422-CR**

———————————

**BENJAMIN MAURINE SADLER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 183rd District Court**
**Harris County, Texas**
**Trial Court Case No. 1382570**

---

**MEMORANDUM OPINION**

A jury convicted appellant Benjamin Maurine Sadler of possession with intent to deliver cocaine in an amount greater than 4 grams and less than 200 grams. *See* TEX. HEALTH & SAFETY CODE §§ 481.102(3)(D), 481.112(a), (d). Sadler pleaded true to the enhancement allegation that he was previously convicted

of the felony offense of possession of a controlled substance with intent to deliver. The jury assessed punishment at 25 years in prison, and Sadler appealed. In three issues, he contends that (1) the trial court erred by admitting a toxicology report, (2) his trial counsel was ineffective for failing to object to the admission of the toxicology report on Confrontation Clause grounds, and (3) the trial court erred by including an extraneous-offense limiting instruction in the jury charge.

Finding no reversible error, we affirm.

## Background

Appellant Benjamin Maurine Sadler was involved in a major accident in which his vehicle struck a utility pole. He was taken by ambulance to Ben Taub Hospital. When Sadler arrived at the hospital, the emergency room staff cut his jeans off to evaluate his injuries. Consistent with the hospital's ordinary procedure, a technician took an inventory of the contents of his pockets. She found $735 in cash and a plastic bag that she suspected contained illegal drugs. Following hospital protocol, the technician gave the cash and suspected drugs to a hospital security guard, who was an off-duty Houston police officer working an extra job.

Meanwhile, City of Humble Police Officer T. Meeks began investigating the accident. When he looked inside Sadler's vehicle, he smelled marijuana. Meeks requested assistance from a DWI investigator, and Officer D. Meyers responded. After Officer Meyers gathered information at the accident location, he went to the

2

hospital. Because both officers suspected that Sadler had been driving while intoxicated, Officer Meyers brought a blood-draw kit with him to the hospital so that he could obtain a "mandatory blood draw."

When Officer Meyers arrived at the hospital, the security guard gave him the cash and the bag of drugs found in Sadler's jeans. Officer Meyers testified at trial that the bag was "full of individually-cut rock, crack cocaine." Field testing confirmed that the material in the bag was cocaine, and this result was later verified by laboratory testing. The police officer who field-tested the cocaine testified that the cocaine was in premeasured $20 portions, worth a total of approximately $500, and the total quantity was too much for personal consumption. He also testified that Sadler's possession of a large amount of cash in small denominations suggested that he was selling the cocaine, as opposed to keeping it for his personal use.

Sadler was charged with possession with intent to distribute a controlled substance, cocaine, in an amount greater than 4 grams and less than 200 grams. At trial, Officer Meyers testified that he did not use the blood-draw kit because possession of a controlled substance is a felony, while driving while intoxicated is a misdemeanor.

The defense theory at trial, as presented through cross-examination and argument, was that the jeans in which the cocaine and money were found did not

3

belong to Sadler. The defense suggested that the jeans may have been left in the trauma treatment room by another patient and the technician who conducted the inventory mistakenly identified the cocaine as belonging to Sadler. However, during cross-examination of the inventory technician and the primary treating nurse, defense counsel also asked questions pertaining to Sadler's medical treatment, including questions about the nature of his injuries, the intensity of his pain, his combative behavior upon being brought to the emergency room, and whether radiography was performed.

Outside the presence of the jury, the State informed the court that it intended to introduce Sadler's medical records into evidence, arguing that they were admissible under the business-records exception to the hearsay rule and that the defense had "opened the door" to admitting the toxicology report in particular, which became admissible to refute the defensive theory that the cocaine was mistakenly identified as Sadler's. Defense counsel objected to the admission of a toxicology report indicating the presence of cocaine, arguing that it had not opened the door to such irrelevant evidence, which in any event was more prejudicial than probative. The defense also objected on hearsay grounds, because the nurse "doesn't know if those [results] are accurate." The trial court overruled the objections and ruled that the medical records were admissible in their entirety

4

because the defense had opened the door, they were business records, and the toxicology report was admissible under Rule 404(b) to show absence of mistake.

The nurse testified that blood tests are routinely gathered in hospital trauma situations. He said: "At a minimum, a type and screen, because we don't know what type of injuries we're going to have. We end up needing to give the patient blood. So, a type and screen is a bare minimum on all trauma patients." He also testified that Sadler tested positive for "benzo, cannabinoid, cocaine, and opiates." On cross-examination, the nurse testified that he did not perform the lab tests. As such, he did not know how the tests were conducted, whether they were properly conducted, or whether the results were accurate.

The charged offense was possession of a controlled substance with intent to deliver. At the charge conference, the court overruled defense counsel's objection to the inclusion of an extraneous-offense instruction in the charge. The jury found Sadler guilty of possession with intent to deliver cocaine, and Sadler appealed.

**Analysis**

Sadler raises three issues on appeal. First, he challenges the admission of medical records that included a toxicology report. He argues that the court erred by admitting this evidence because it violated the Confrontation Clause and was hearsay. Second, he argues that he received ineffective assistance of counsel because his trial attorney failed to object to the admission of the toxicology report

5

on Confrontation Clause grounds. Third, he argues that the court erred by including an extraneous-offense limiting instruction in the jury charge.

## I.      Admission of toxicology report

In his first issue, Sadler argues that the trial court erred by admitting into evidence medical records that included toxicology lab results, as well as testimony about the lab results. On appeal, Sadler contends that his rights under the Confrontation Clause were violated because he had no opportunity to confront and cross-examine the analyst who performed the test and reported the results. He also argues that the toxicology report was inadmissible hearsay within hearsay.

To preserve error for appellate review, a defendant must make a timely and reasonably specific objection in the trial court, and the issue on appeal must comport with the objection made at trial. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012) (citing TEX. R. APP. P. 33.1(a)(1)(A)). Even constitutional errors may be waived if a party fails to properly object at trial. *Id.* However, "where the correct ground for an objection is obvious to the judge and opposing counsel, no waiver results from a general or imprecise objection." *Id.* (citing *Zillender v. State*, 557 S.W.2d 515, 517 (Tex. Crim. App. 1977)). Rather, to avoid waiver of an appellate issue, a party must let the trial judge know what he wants and why he thinks he is entitled to it, and he must do so clearly enough for the judge to understand him at a time when the judge is in the proper position to do something

about it. *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009). "In determining whether a complaint on appeal comports with a complaint made at trial, we look to the context of the objection and the shared understanding of the parties at the time." *Clark*, 365 S.W.3d at 339.

## A. Confrontation Clause

On appeal Sadler contends that his rights under the Confrontation Clause were violated, though he concedes that he did not expressly object on that basis at trial. Instead, he offers the conclusory assertion that "his objections and cross-examination were functionally equivalent to making a confrontation clause objection and thus the grounds were apparent from the context."

The actual objections offered at trial to the admission of the medical records were that they were not relevant, that the defense did not open the door to their admission, and that admission of the records, including the toxicology report, would be unfairly prejudicial. In particular, Sadler argued that the medical records, specifically the toxicology report indicating the presence of cocaine, would mislead the jury into believing that he intended to distribute the drugs found in the jeans. He argued that his counsel had not opened the door to the admission of this evidence because the cross-examination concerning his medical treatment was simply background information intended to show that Sadler left the trauma treatment room at one point, which related to the defensive theory that someone

7

else could have put the jeans or the drugs in the room. Sadler further argued that the medical records were irrelevant because the presence of cocaine in his system did not make it any more or less probable that he had intent to distribute drugs.

Defense counsel never mentioned the Confrontation Clause or in any way communicated to the court a desire to question the person who performed the blood analysis. Sadler's appellate brief fails to identify any particular part of the record or offer any legal argument to support the assertion that a Confrontation Clause objection was apparent from the context. Accordingly, we conclude that this appellate issue does not comport with the objection at trial. *See Clark*, 365 S.W.3d at 339; *see also Baker v. State*, No. 01-12-00554-CR, 2013 WL 2146715, at \*1 (Tex. App.—Houston [1st Dist.] May 16, 2013, pet. ref'd) (mem. op.) (not designated for publication) (holding that an objection based on Texas Rule of Evidence 613(b) did not preserve a Confrontation Clause argument for appeal).

### B. Hearsay

At trial, Sadler's counsel objected on hearsay grounds to the nurse testifying, based on the medical records, that his blood had tested positive for cocaine. Counsel explained the basis for the objection by stating: "That's hearsay because he doesn't know if those are accurate." In response, the State conceded that the medical records were hearsay, but it nevertheless sought admission of them pursuant to the business-records exception to the hearsay rule. *See* TEX. R. EVID.

8

803(6). The trial court accepted this argument and ruled that because the medical records had been admitted, Nurse Smith was permitted to testify to "anything" included in them.

On appeal, Sadler argues that the toxicology record was "hearsay within hearsay." This does not comport with the objection made at trial.

We hold that Sadler's first issue is waived, and we overrule it.

## II. Ineffective assistance of counsel

In his second issue, Sadler contends that he received ineffective assistance of counsel because his trial counsel failed to object to the admission of the toxicology lab results on Confrontation Clause grounds.

Claims that a defendant received ineffective assistance of counsel are governed by the standard announced by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). *Strickland* mandates a two-part test: whether the attorney's performance was deficient, i.e., whether counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and if so, whether that deficient performance prejudiced the party's defense. 466 U.S. at 687, 104 S. Ct. at 2064. "The defendant has the burden to establish both prongs by a preponderance of the evidence; failure to make either showing defeats an ineffectiveness claim."

9

*Shamim v. State*, 443 S.W.3d 316, 321 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (citing *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011)).

The adequacy of attorney performance is judged against what is reasonable considering prevailing professional norms. *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065. There is a presumption that, considering the circumstances, a lawyer's choices were reasonably professional and motivated by sound trial strategy. *Id.* at 689, 104 S. Ct. at 2065. Limitations of the record often render a direct appeal ineffective to adequately raise a claim of ineffective assistance of counsel. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Critically, "[a]n ineffective-assistance claim must be firmly founded in the record and the record must affirmatively demonstrate the meritorious nature of the claim." *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012). Therefore, when the record is silent as to trial counsel's strategy, we will not conclude that defense counsel's assistance was ineffective unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

Sadler contends that the admission of the toxicology report violated his right to confront witnesses against him because he had no opportunity to cross-examine the analyst who performed the test. "Under the Confrontation Clause of the Sixth Amendment of the United States Constitution, made applicable to the states

10

through the Fourteenth Amendment, 'in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'" *Burch v. State*, 401 S.W.3d 634, 636 (Tex. Crim. App. 2013) (quoting *Pointer v. Texas*, 380 U.S. 400, 403, 85 S. Ct. 1065 (1965)). "The Supreme Court has explicitly held that an analyst's certification prepared in connection with a criminal investigation or prosecution (specifically, a report identifying a substance as cocaine) is testimonial and cannot be admitted without satisfying the requirements of the Confrontation Clause." *Id.* at 636–37 (citing *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311, 129 S. Ct. 2527 (2009)). As potentially relevant to the Confrontation Clause objection that Sadler contends his trial counsel should have made, medical records created for the primary purpose of medical treatment and diagnosis are not subject to the requirements of the Confrontation Clause. *See Melendez–Diaz*, 557 U.S. at 312 n.2, 129 S. Ct. at 2533 n.2 (stating that medical records created for purposes of treatment are not testimonial within the meaning of *Crawford*); *cf. Gordon v. State*, No. 01-13-00831-CR, 2015 WL 1263109, at *4 (Tex. App.—Houston [1st Dist.] Mar. 19, 2015, no pet.) (mem. op.).

In this case, the record provides no indication as to why Sadler's counsel did not object to the toxicology report on Confrontation Clause grounds. In *Menefield v. State*, 363 S.W.3d 591 (Tex. Crim. App. 2012), the Court of Criminal Appeals considered a claim that trial counsel was ineffective for failing to object to a

laboratory report on Confrontation Clause grounds. 363 S.W.3d at 593. Because the record was silent as to why trial counsel had not made such an objection, the Court concluded that the record did not show deficient performance. *Id.*

The record here is likewise silent as to trial counsel's reasoning, and we cannot presume that there could be no justification for failing to make such an objection. Perhaps such an objection would not be well-founded because the evidence showed that the blood test was conducted for the purpose of medical diagnosis and treatment upon Sadler's admission to the hospital. *See Melendez–Diaz*, 557 U.S. at 312 n.2, 129 S. Ct. at 2533, n.2. In the absence of a record reflecting why Sadler's counsel did not object, we hold that the record does not firmly establish deficient performance. *See Menefield*, 363 S.W.3d at 591–93. We overrule Sadler's second issue.

## III.   Jury charge

In his third issue, Sadler contends that the trial court erred by including an extraneous-offense limiting instruction in the jury charge over his counsel's objection. The trial court included the following instruction in its charge to the jury:

> You are further instructed that if there is any evidence before you in this case regarding the defendant's committing an alleged offense or offenses other than the offense alleged against him in the indictment in this case, you cannot consider such evidence for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offense or offenses, if any, and even then you

may only consider the same in determining the motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident of the defendant, if any, in connection with the offense, if any, alleged against him in the indictment and for no other purpose.

At the charge conference, defense counsel objected to this instruction, which the court stated was "specifically in compliance with 404(b)." Defense counsel stated that she thought the instruction could confuse the jury "in regard to the fact that . . . there may be an underlying basis for them to believe that [Sadler] has committed other offenses." Specifically, counsel argued that "the Court is giving the carte blanche to consider the prior offense . . . if they believe that there's a motive, opportunity or intent. So, now we're taking into account the charge of possession where we have not prepared for or making records thereto." The trial court overruled the objection.

On appeal, we review a challenge to a jury charge using a two-step process. *See Sakil v. State*, 287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009). First, we must determine whether the jury charge contained an error. *Id.* at 25. If it did, we then evaluate whether the error was harmful so as to constitute reversible error. *Id.* at 25–26. To determine whether there was error in the charge, we consider it "as a whole instead of a series of isolated and unrelated statements." *Dinkins v. State*, 894 S.W.2d 330, 339 (Tex. Crim. App. 1995).

The trial court is required to give the jury "a written charge distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. art. 36.14; *see Celis*

13

*v. State*, 416 S.W.3d 419, 433 (Tex. Crim. App. 2013). In general, a trial court is not required to instruct the jury sua sponte on the burden of proof to be used when considering evidence of an extraneous offense during the guilt phase. *Delgado v. State*, 235 S.W.3d 244, 254 (Tex. Crim. App. 2007). In *Fair v. State*, 465 S.W.2d 753 (Tex. Crim. App. 1971), the Court of Criminal Appeals considered a defendant's argument that the trial court erred by overruling his objection to a limiting instruction on extraneous offenses that the court included in the jury charge. *Fair*, 465 S.W.2d at 754. The Court held that although the trial court was not required to give the limiting instruction, it "was not harmful but beneficial to the appellant." *Id.* at 755. The Court concluded that instructing the jury—over the defendant's objection—that it could consider the extraneous offense only for a limited purpose was not reversible error. *Id.*; *accord Lee v. State*, 496 S.W.2d 616, 619 (Tex. Crim. App. 1973); *Easter v. State*, 867 S.W.2d 929, 941 (Tex. App.—Waco 1993, pet. ref'd); *Jasso v. State*, 699 S.W.2d 658, 662 (Tex. App.—San Antonio 1985, no pet.).

Sadler argues that the trial court erred by overruling his objection and including a limiting instruction on the use of evidence of extraneous offenses. He contends that the decision whether to request such an instruction may be a matter of trial strategy. Under the precedents of the Court of Criminal Appeals, such an instruction would be considered beneficial to the defendant. *See Fair*, 465 S.W.2d

14

at 754; *Jasso*, 699 S.W.2d at 662. As such, the trial court's inclusion of this instruction was not reversible error. *See Fair*, 465 S.W.2d at 755.

Accordingly, we overrule Sadler's third issue.

## Conclusion

We affirm the judgment of the trial court.


Michael Massengale
Justice

Panel consists of Justices Keyes, Bland, and Massengale.

Do not publish. TEX. R. APP. P. 47.2(b).